**STATE of Utah, Plaintiff and Appellee,**

v.

**Teri Lin GODDARD, Defendant and Appellant.**

No. 910241.

Supreme Court of Utah.

March 9, 1994.

R. Paul Van Dam, Atty. Gen., Joanne C. Slotnik, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Curtis C. Nesset, Salt Lake City, for defendant and appellant.

HOWE, Justice:

Defendant Teri Lin Goddard appeals from her conviction of second degree murder under Utah Code Ann. § 76–5–203 (1990).[1] She contends that (1) insufficient evidence was adduced to sustain her conviction; (2) the trial court erroneously denied her motion for a directed verdict; (3) newly discovered evidence entitled her to a new trial; (4) she had ineffective assistance of counsel; and (5) she was deprived of her right to a unanimous jury verdict.

### FACTS

■ We review the facts in a light most favorable to the jury verdict. *State v. Hamilton*, 827 P.2d 232, 233–34 (Utah 1992). Goddard lived with her seven-year-old son, Dustin, and her boyfriend, Derek Hall. Hall was in violation of his parole agreement and was aware that a warrant had been issued for his arrest. Throughout the day of June 1, 1990, Goddard and Hall drank alcoholic beverages. In the early evening, Hall went to a neighbor's house and continued drinking. Goddard eventually followed Hall to this house. Hall later went by himself to the house of a second neighbor, Frank Gutierrez, for a drinking party. Jay Jackson and at least two women were also at the Gutierrez

residence. Around 7 p.m., Hall and Gutierrez left in Gutierrez's truck to buy more beer. As Goddard saw the truck leaving, she yelled, "Don't you come back here or I'll kill you. You stay the hell away from me." Around 10 p.m., Goddard went to Gutierrez's house initially planning to retrieve Hall, but she, too, joined the party. At one point during the party, in Hall's presence, Goddard took Gutierrez's hands and placed them on her breasts. Hall left shortly after this incident and returned home.

Still at the party, Goddard began to argue with two women, one of whom wanted to purchase cocaine. This argument appeared to be provoking violence, so Gutierrez asked the women to leave. Goddard returned home, where Hall was waiting. He was wearing blue jeans but no shirt. Goddard testified that because of the argument which occurred at the party, she was afraid for her safety and consequently took a fish fillet knife from her kitchen drawer to protect herself from the women. Since there was an outstanding warrant for his arrest, Hall became upset over the possibility of police involvement. He and Goddard began to argue. Near this time, a neighbor was awakened by loud voices coming from the Goddard house.

At trial, each party advanced a different version of how Hall's death occurred. Goddard testified that Hall pushed her into a swivel rocking chair. She was slanted in the chair with her pelvis just off the front of the seat and her head at the back. Then Hall kneeled between her legs and grabbed her arms while she held the knife, which pointed up at him. Hall next grabbed her hand, which was holding the knife close to her body. Goddard testified that Hall leaned forward on her, accidentally impaling himself on the knife. As they stared at each other, Hall stated, "What did you do, stab me in the heart?" Goddard still clung to the knife as Hall fell to the side of the chair. He then collapsed backward on the floor and died. Upon realizing what had happened, Goddard became hysterical and ran throughout the neighborhood, knife in hand, screaming for

---

1. Following this verdict, the statute was amended in 1991, deleting the second degree murder classification and making the crime simply

"murder." Utah Code Ann. § 76–5–203 (Supp. 1993).

someone to call the police. The State's version is different as it asserts that Goddard stabbed Hall in the chest during an altercation.

The knife punctured Hall's chest, and blood filled his pericardial sac, compressing the heart and causing death. A jury convicted Goddard of second degree murder.

## ANALYSIS

### I. Sufficiency of Evidence

Goddard first contends that there is insufficient evidence to support her second degree murder conviction. The State charged her under the first three variants of Utah's second degree murder statute: (1) The defendant intentionally or knowingly caused the death of another; (2) intending to cause serious bodily injury to another, the defendant committed an act clearly dangerous to human life that caused the death of another; and (3) acting under circumstances evidencing a depraved indifference to human life, the defendant engaged in conduct which created a grave risk of death to another and thereby caused the death of another. Utah Code Ann. § 76–5–203(1)(a), (b), (c).

After the prosecution presented its case, Goddard moved to dismiss the charge for lack of evidence. The trial court refused to dismiss the first two variants but did dismiss the third variant, depraved indifference murder. At the close of all the evidence, the court denied Goddard's motion for a directed verdict in which she argued that the evidence did not support an intentional or knowing homicide or an intent to inflict serious bodily injury. After the jury found Goddard guilty, she moved to arrest the judgment. The court denied the motion.

■ In reviewing the sufficiency of the evidence in a criminal conviction, we reemphasize the limited role of an appellate court. In such cases, we afford great deference to the jury verdict. *State v. James*, 819 P.2d 781, 784–85 (Utah 1991). We will not sit as a second fact finder, nor will we determine the credibility of witnesses. That is the prerogative of the jury. "Where there is any evidence, including reasonable inferences that can be drawn from it, from which findings of all the elements of the crime can be made beyond a reasonable doubt, our inquiry is complete and we will sustain the verdict." *State v. Gardner*, 789 P.2d 273, 285 (Utah 1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990). We will reverse a criminal conviction for insufficient evidence only when the evidence is so inconclusive or so inherently improbable that "reasonable minds must have entertained a reasonable doubt" that the defendant committed the crime. *State v. Petree*, 659 P.2d 443, 444 (Utah 1983), *superseded by rule on other grounds, State v. Walker*, 743 P.2d 191 (Utah 1987).

■ Goddard attacks the State's evidence of her intent. She concludes that the surrounding circumstantial evidence was tenuous and that the jury made a speculative leap to reach its guilty verdict. Indeed, proving intent is no easy matter. Such a determination is "rarely susceptible of direct proof." *State v. Murphy*, 617 P.2d 399, 402 (Utah 1980). As we stated in *State v. Canfield*, 18 Utah 2d 292, 422 P.2d 196, 198 (1967), we are aware of no better way to determine a defendant's intent than by showing both what she did and what she said. That is precisely how we will proceed in the instant appeal.

One of Goddard's neighbors, Christine Grogan, testified that on the evening of Hall's death, she saw Goddard and heard her scream at Gutierrez's truck, "Don't you come back here or I'll kill you. You stay the hell away from me." Gutierrez later testified that he and Hall had driven in his truck to buy more beer on the evening this threat was made. Although Grogan did not think much of the threat at the time, it would not be unreasonable for the jury to infer that Goddard directed this threat toward Hall. Gutierrez also testified that at the party, in Hall's presence, Goddard took Gutierrez's hands and placed them on her breasts. Although Gutierrez interpreted this action as a joke, it seems reasonable for the jury to infer that there was some ongoing dispute between Goddard and Hall and that her actions were meant to provoke or upset him. Another neighbor, Beth Steed, testified that near the time of Hall's death, she was awakened

by loud male and female voices coming from the Goddard home. From this, a jury could reasonably infer that Goddard and Hall were arguing or fighting. This is all evidence of what Goddard did and said, and although it is not direct proof, a jury could reasonably infer that there was hostility between her and Hall. *See State v. Emmett,* 839 P.2d 781, 784 (Utah 1992).

The physical evidence and expert opinion offered by the State similarly support the guilty verdict. Dr. Sharon Schnittker, a forensic pathologist and the associate state medical examiner, was a critical witness for the State. She testified that Goddard's version of how Hall's death occurred was "extremely unlikely." Dr. Schnittker observed that there was no blood on the front of Goddard's sweatshirt or hands. She concluded that this was inconsistent with Goddard's testimony of how Hall impaled himself on the knife while he was directly over her in the chair. Dr. Schnittker opined that Hall's three-inch wound was the result of thrusting or stabbing into the chest and the cartilage protecting the heart. From this, she concluded that it would also be unlikely that the victim accidently impaled himself by falling on the knife. Based on Goddard's own testimony, Dr. Schnittker pointed out that Hall was securely braced in his stance over Goddard with both legs and knees on the ground and with both hands clutching Goddard. She therefore viewed it unlikely for Hall to drop or lean onto the knife with the necessary force to penetrate his chest. Since Hall had grasped Goddard's hand that held the knife, Schnittker concluded that Hall could have easily deflected the knife before it penetrated his chest. Finally, Dr. Schnittker had discovered a wound on Hall's left palm. Although this cut was extremely superficial, Dr. Schnittker testified that it could have been a defensive wound. In light of all this testimony and physical evidence, we find it reasonable for the jury to have rejected Goddard's account of Hall's accidental death.

■ Goddard argues that the testimonies of the State's witnesses are internally inconsistent. Specifically, she emphasizes how Grogan thought nothing of the alleged threat when it was made and that she did not see

Hall in Gutierrez's truck. She points out that Gutierrez, himself, interpreted Goddard's actions at the party to be in jest and that Hall left the party in a good mood. Steed stated that although she heard loud voices from the Goddard home, she could not decipher what was said. Finally, Goddard assails Dr. Schnittker's opinions because she admitted that holding a person's arms could stabilize the knife sufficiently to cause the wound if the victim fell on it and because she did not know the exact amount of force used to cause the fatal wound. These are not internal inconsistencies. Witness testimony is often incomplete and lacking in detail. The law allows juries to draw fair inferences from such testimony, and as long as these inferences are not speculative, an appellate court is obligated to uphold them. The alleged inconsistencies or voids simply go to the weight of the testimony and are factual questions for the jury to determine.

■ It is true that Goddard was the only witness to the events immediately preceding Hall's death. However, she is not entitled to reversal of her conviction simply because her version of the facts is different from the State's or simply because there are some gaps in the State's evidence. "The existence of contradictory evidence does not warrant disturbing the jury's verdict.... The fact finder is free to weigh the conflicting evidence presented and to draw its own conclusions." *State v. Pierce,* 722 P.2d 780, 781–82 (Utah 1986) (citations omitted); *see State v. Carlsen,* 638 P.2d 512, 514–15 (Utah 1981), *cert. denied,* 455 U.S. 958, 102 S.Ct. 1469, 71 L.Ed.2d 676 (1982). The jury need not accept defendant's version of the facts but may disregard it in whole or in part. *Pierce,* 722 P.2d at 781. In essence, Goddard urges us to retry the facts of this case on appeal, and we refuse to do so. In light of the entire evidentiary picture, we conclude that a jury could reasonably disregard Goddard's testimony and that reasonable minds could infer the required mens rea for second degree murder beyond a reasonable doubt.

## II. Dismissal of Depraved Indifference Alternative

Since we have already determined that there was sufficient evidence to uphold the

conviction under either of the first two variants of second degree murder, we need not address the propriety of the trial court's dismissing the third variant concerning depraved indifference. When the trial court eliminated this third alternative, it narrowed the possible guilty options for the jury. If anything, Goddard benefitted by this dismissal.

## III. Denial of Motion for New Trial

■ A trial court may grant a new trial "in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party." Utah R.Crim.P. 24(a). Following the trial, Goddard moved for a new trial, supported by the affidavit of Dr. Judith Bunker, who Goddard asserts is a nationally recognized blood spatter expert. Goddard argued that Dr. Bunker's conclusions were new and exculpatory evidence which warranted a new trial because they supported her testimony that Hall's death was accidental.

■ A trial court has a wide range of discretion in determining whether newly discovered evidence entitles a litigant to a new trial. State v. James, 819 P.2d 781, 793 (Utah 1991). If the trial court's decision is within the limits of reasonability, we will uphold it. State v. Hamilton, 827 P.2d 232, 239–40 (Utah 1992). We recently set out the standard that new evidence must meet to constitute grounds for a new trial:

(1) It must be such as could not with reasonable diligence have been discovered and produced at the trial; (2) it must not be merely cumulative; (3) it must be such as to render a different result probable on the retrial of the case.

James, 819 P.2d at 793. All three of these criteria must be met. Also, newly discovered evidence should clarify a fact that was contested and resolved against the movant. State v. Worthen, 765 P.2d 839, 851 (Utah 1988).

At the hearing held on Goddard's motion for a new trial, she asserted that Dr. Bunker concluded that Hall was kneeling when the wound was inflicted, that there was no evidence of "blood spurting or otherwise projecting," that blood could have dripped onto the back of Goddard's sleeve rather than the on front of her sweatshirt, and that blood stains on the chair were consistent with Hall's impaling himself on the knife, pulling back, and then falling forward again onto the arm of the chair.

The prosecutor responded by separately analyzing Dr. Bunker's six conclusions and then arguing to the trial court that none of them contradicted Dr. Schnittker's testimony. The trial judge agreed, ruling that Dr. Bunker's affidavit was "not sufficiently inconsistent with the evidence as presented to the jury," and denied the motion for a new trial.

We have reviewed the argument made by counsel to the trial court and conclude that the denial of the motion "is within the limits of reasonability." Hamilton, 827 P.2d at 239–40. The State admitted that the immediate details surrounding Hall's death were uncertain. On cross-examination, Dr. Schnittker answered that she was not sure whether Hall was standing or kneeling when he was fatally wounded. Because the trial court found that Dr. Bunker's conclusions were not sufficiently inconsistent with the evidence presented to the jury at the trial, it is not probable that a different result would occur on retrial. James, 819 P.2d at 793.

## IV. Ineffective Assistance of Counsel

■ Goddard contends that her trial counsel was ineffective in several instances. In order to constitute ineffective assistance, counsel's performance must, first, fall below an objective standard of reasonableness and, second, prejudice the outcome of the proceedings. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To facilitate this analysis, an appellate court may skip to the second prong of the Strickland standard and determine that the ineffectiveness, if any, did not prejudice the trial's outcome. Id. at 697, 104 S.Ct. at 2069–70; State v. Hay, 859 P.2d 1, 5 (Utah 1993).

■ Goddard first asserts that her representation was deficient because her counsel failed to investigate and challenge the State's "blood spatter" evidence until after trial,

when she procured the affidavit of Dr. Bunker. The latter did not testify at trial. We find no merit in this assertion because, as we have pointed out above, the trial court concluded that the "new blood spatter" evidence presented through Dr. Bunker's affidavit and report was not "sufficiently inconsistent with the evidence as presented to the jury" to warrant a new trial. We agree with that conclusion. Therefore, Goddard was not prejudiced by reason of her counsel's failure to adduce Dr. Bunker's testimony at trial.

■ Goddard next contends that her counsel was ineffective because she failed to challenge Dr. Schnittker's qualifications to testify concerning what Goddard asserts was blood spatter evidence. We are unable on the record before us to address this contention. While Goddard has cited *State v. Rodgers*, 119 Idaho 1047, 812 P.2d 1208 (1991), where it was recognized that blood spatter analysis is a "well recognized discipline," we have no record from which we can determine the parameters of that discipline. *Id.* at 1212. Dr. Schnittker was qualified as a forensic pathologist and held the office of associate state medical examiner. There is nothing before us to indicate that any of her testimony went beyond those qualifications and into a discipline where she was not qualified. While she did draw a conclusion from the absence of blood on the front of Goddard's shirt, we have no way of knowing whether this testimony took her into the realm of blood spatter evidence.

■ Goddard also contends that her counsel was ineffective because she failed to object when the prosecutor repeatedly asked Goddard why other witnesses would lie. Goddard denied yelling threats at Hall while he was in Gutierrez's truck. She denied placing Gutierrez's hands on her breasts at the party and denied having a loud argument just before Hall's death. She even denied, as Gutierrez testified, that she showed up at Gutierrez's house immediately after the stabbing asking him to call the police. After each denial, the prosecutor specifically asked if Goddard knew of any motivation for these prior witnesses to lie.

■ Such questions by the State were improper. In dictum in *State v. Emmett*, 839 P.2d 781, 787 (Utah 1992), we stated that it is inappropriate "to ask a criminal defendant to comment on the veracity of another witness." We also noted that there is a general prejudicial effect in these types of questions. *Id.* However, we now clarify that, in and of themselves, these improper questions do not automatically warrant reversal. Rather, it is necessary to examine their overall effect on a case-by-case basis and determine whether the errors affected the entire evidentiary picture or had an isolated effect. *State v. Templin*, 805 P.2d 182, 187 (Utah 1991).

In the instant case, counsel's failure to object to the improper questions does not undermine our confidence in the guilty verdict. *Id.* These questions were not lengthy and were not the focus of the State's cross-examination. They were brief references to which Goddard, for the most part, simply responded "no." In fact, in answering the question concerning Gutierrez's motivation to lie, Goddard responded that she had no idea because "they get so drunk down there, they do all kinds of other stuff down there." This response may have impeached Gutierrez's testimony and actually help Goddard's case. We do not believe that this brief line of questioning forced the jury to disregard its sworn duty to decide the case on the evidence, and there is no reasonable probability that they would have come to a different conclusion. *See id.* Counsel's failure to object to these questions did not prejudice the case.

### V. Jury Unanimity

■ Goddard contends that it was error for the trial court to refuse to require the jury to be unanimous as to which variant of second degree murder she committed. Utah Code Ann. § 76–5–203(1)(a), (b). In *State v. Russell*, 733 P.2d 162 (Utah 1987), we held that the right to a unanimous jury verdict does not include a right to a unanimous decision as to which of the first three variants the jury chose in the single crime of second degree murder. *Id.* at 165. Goddard was thus entitled only to a unanimous verdict

that she was guilty of the crime of second degree murder.

We affirm the conviction.

ZIMMERMAN, C.J., and DURHAM, J., concur.

STEWART, Associate C.J., concurs in the result.

HALL, J., heard arguments but retired before he could act on the opinion.