**STATE of Utah, Plaintiff and Appellee,**

v.

**Dwaine Attila COSEY, Defendant and Appellant.**

**No. 930131–CA.**

Court of Appeals of Utah.

April 21, 1994.

James C. Haskins and Paul Gotay, Murray, for defendant-appellant.

Jan Graham and Joanne C. Slotnik, Salt Lake City, for plaintiff-appellee.

Before ORME, Associate P.J., and BENCH and RUSSON, JJ.[1]

ORME, Associate Presiding Judge:

Defendant Dwaine Cosey appeals his conviction for rape, a first degree felony, in violation of Utah Code Ann. § 76–5–402 (1990). Defendant claims that he was denied the effective assistance of counsel during jury selection, that he did not receive a fair trial because the victim remained in the courtroom, and that evidence of the victim's subsequent behavior was improperly admitted. We affirm.

## FACTS

We recite the facts in the light most favorable to the jury's verdict. *State v. Hamilton,* 827 P.2d 232, 233–34 (Utah 1992). In the early hours of March 20, 1992, the victim in this case answered a knock at her door. Outside the door was defendant Cosey, an acquaintance of the victim, who subsequently entered the apartment. The victim testified that after a brief conversation on the couch, she became nervous as a result of defendant's comments and asked him to leave. Instead, defendant tried to kiss her, and when she again insisted that he leave, he grabbed her and started dragging her toward the bedroom. On the way, defendant put a knife to her throat, forced her into the bedroom and onto the bed, and proceeded to undress her. According to the victim, defendant then raped her. Defendant admitted that he had sex with the victim, but claimed that it was consensual.

Defendant was charged with aggravated sexual assault and convicted by a jury of the

---

1. Justice Russon heard the arguments in this case and participated in its resolution prior to his swearing-in as a member of the Utah Supreme Court.

lesser included offense of rape. On appeal, defendant claims that his trial counsel should have challenged one of the jurors for cause, that the trial court erred in allowing the victim to remain in the courtroom, and that the court should have excluded testimony by the victim's mother concerning the victim's behavior after the incident.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Defendant first claims that he was denied his constitutional right to the effective assistance of counsel. *See* U.S. Const. amend. VI; *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). Where the claim of ineffective assistance of counsel "is raised for the first time on direct appeal, we must decide whether defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Tennyson,* 850 P.2d 461, 466 (Utah App.1993). *See State v. Ellifritz,* 835 P.2d 170, 175 (Utah App.1992).

■ Defendant must meet a two-part test to prevail on his claim. First, defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). However, to do so, defendant must overcome a strong presumption that counsel's performance fell "within the wide range of reasonable professional assistance" and that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). *Accord State v. Templin,* 805 P.2d 182, 186 (Utah 1990). Second, defendant must show that counsel's deficient performance was prejudicial to his defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Defendant can meet the prejudice requirement only by showing that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. *Accord Tennyson,* 850 P.2d at 466.

■ Prior to the presentation of evidence, the trial court conducted voir dire of prospec-

tive jurors to determine their ability to be fair and impartial. At the conclusion of its questioning, the court asked if there was anything further that the jurors believed might affect their judgment. Juror Hodges informed the court that for the past sixteen years she had worked as a diversion officer at the Salt Lake City Police Department and had both an office there and at the County Sheriff's Department. In response to further questioning by the court, Juror Hodges responded that her circumstances would not affect her ability to be fair and impartial. The court was satisfied with her response, defendant's trial counsel did not challenge her, and she served as a juror.

Defendant now claims that trial counsel's failure to challenge Juror Hodges for cause constituted ineffective assistance of counsel because her statements clearly showed bias. While we fail to see how Juror Hodges' responses establish any actual prejudice on her part, it seems even more tenuous to claim that the failure to challenge her for cause constituted ineffective assistance of counsel. As noted by the Fifth Circuit, "[t]he selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. Written records give us only shadows for measuring the quality of such efforts." *Romero v. Lynaugh,* 884 F.2d 871, 878 (5th Cir.1989), *cert. denied, Romero v. Collins,* 494 U.S. 1012, 110 S.Ct. 1311, 108 L.Ed.2d 487 (1990).

This court has also recognized the difficulty of trying to assess what counsel was thinking during jury selection, "because of our inability, on appeal, to view the jurors and assess their potential bias. Only those present, the court and counsel, have that advantaged view." *Ellifritz,* 835 P.2d at 177. Further, "the transcript reveals nothing about [the juror's] demeanor or other intangible characteristics that constitute the collage of attributes attorneys assess in choosing jurors. For all we know [he or she] was the most attentive juror, or the only one who glanced disparagingly at the prosecution or sympathetically toward the defendant." *Tennyson,* 850 P.2d at 469. Our review of counsel's performance "is inherently ham-

pered by our necessary reliance on only the lifeless transcript to assess the dynamic and highly judgmental process of jury selection." *Id.* at 467. Accordingly, we could only speculate as to what trial counsel was thinking when selecting a particular juror, or what effect that selection would play in counsel's overall strategy or plan. *See State v. Villarreal,* 857 P.2d 949, 954–55 (Utah App.1993). Such speculation is manifestly inappropriate, given the strong presumption that counsel's behavior was the product of trial strategy rather than ineptitude. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Villarreal,* 857 P.2d at 954; *Templin,* 805 P.2d at 186.

■ Even when trial counsel allows the ultimate selection of a juror who initially appeared biased on voir dire, "courts deny the ineffective assistance claim unless counsel's actions could not conceivably constitute legitimate trial tactics." *Tennyson,* 850 P.2d at 469 (citations omitted). Consequently, at least where the attorney has actively participated in the jury selection process, as in the case before us, we cannot see how counsel's

action could give rise to a successful ineffective assistance claim. *See Villarreal,* 857 P.2d at 955. Given the fact that we are ill-equipped to determine what actually occurred, "we 'will not second-guess a trial attorney's legitimate use of judgment as to trial tactics or strategy.'" *Tennyson,* 850 P.2d at 470 (quoting *State v. Pascual,* 804 P.2d 553, 556 (Utah App.1991)).

■ Thus, absent at least some showing that trial counsel has failed to reasonably participate in the selection of jurors, we hold that an ineffective assistance claim premised on the failure to challenge any particular juror for cause cannot "overcome the strong presumption that trial counsel rendered adequate assistance and exercised reasonable professional judgment" in the selection process.[2] *State v. Bullock,* 791 P.2d 155, 159–60 (Utah 1989), *cert. denied,* 497 U.S. 1024, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990).

## EXCLUSION OF THE VICTIM

■ Defendant's second claim is that the trial court abused its discretion by not ex-

---

2. The dissent argues that *State v. Humphries,* 818 P.2d 1027 (Utah 1991), and *State v. Garrett,* 849 P.2d 578 (Utah App.1993), require us to hold that defendant's claim of ineffective assistance of counsel cannot be addressed at this time. However, in *Humphries* the Utah Supreme Court held that where the record is adequate and the defendant is no longer represented by trial counsel, an appellate court may hear a claim of ineffective assistance raised for the first time on appeal. 818 P.2d at 1029. Defendant Cosey has new appellate counsel and the record contains sufficient information, when coupled with the *Strickland* presumption, to definitively decide his claim. *See State v. Villarreal,* 857 P.2d 949, 953–54 (Utah App.1993).

In *Garrett,* the defendant claimed that his trial counsel was ineffective based on counsel's failure to object to the prosecution's allegedly unconstitutional challenge of three minority members from the jury pool. 849 P.2d at 581. *See generally Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (racially motivated peremptory strikes are unconstitutional). Since the *Garrett* court had no way of knowing from the record "whether defense counsel's failure to object to the strikes was deficient performance or trial strategy," it held that it could not decide the issue on direct appeal. 849 P.2d at 581.

The present case is readily distinguishable from *Garrett. Garrett* involved the failure to challenge the prosecution's possibly unconstitutional striking of three minority jurors, as opposed to the "garden variety" concern about a

single juror which is raised in this case. There is simply no basis for requiring additional evidence in order to decide this defendant's claim once and for all. Additional factfinding is basically useless when trial counsel has actively participated in the jury selection process, since we know as much as we should ever know about his or her thinking in the "dynamic and highly judgmental" process of selecting a specific juror. *State v. Tennyson,* 850 P.2d 461, 467 (Utah App.1993). It is pointless to attempt to reconstruct trial counsel's thoughts and impressions which are so essential in the jury selection process, *see Romero v. Lynaugh,* 884 F.2d 871, 878 (5th Cir.1989), and any such effort flies in the face of the presumption that trial counsel acted effectively. *See Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

In the case at hand, trial counsel's *performance* in voir dire—as opposed to his mental impressions and resulting tactical decisions—is beyond reproach. He posed questions to potential jurors, directed the court's questioning in several instances, challenged certain jurors for cause, and exercised his peremptory strikes. Moreover, the prosecution, defense counsel, and the trial court all specifically discussed whether Juror Hodges should sit on the panel, with all apparently agreeing that she should. Given the *Strickland* presumption and trial counsel's active participation, there is simply no reason to delay deciding defendant's ineffective assistance claim. *See Villarreal,* 857 P.2d at 955.

cluding the victim, who testified for the prosecution, from the courtroom. However, whether or not the trial court even had discretion to exclude the victim from the courtroom depends on the interplay between two provisions of law. The trial court's interpretation and application of a statute or rule presents a question of law. *State ex rel. Division of Consumer Protection v. Rio Vista Oil, Ltd.,* 786 P.2d 1343, 1347 (Utah 1990); *Ohline Corp. v. Granite Mill,* 849 P.2d 602, 605 (Utah App.1993). "[W]e accord conclusions of law no particular deference, but review them for correctness." *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985). *See Salt Lake City v. Emerson,* 861 P.2d 443, 445 (Utah App.1993).

Defendant claims that the trial court abused the discretion afforded it by Utah Code Ann. § 78–7–4 (1992). Section 78–7–4 provides that "in any cause the court may, in its discretion, during the examination of a witness exclude any and all other witnesses in the cause." Defendant argues that by allowing the victim to remain in the courtroom after testifying, the trial court deprived him of a fair and impartial trial, in that subsequent witnesses may have shaped their testimony to conform to what they believed the victim wanted them to say.

■■■ While we doubt that the trial court abused its statutory discretion in allowing the victim to remain in the courtroom, Utah Rule of Evidence 615, duly promulgated by the Utah Supreme Court, effectively disposes of defendant's claim.[3] Under Rule 615, the trial court had no discretion to exclude the victim. According to the rule, a witness may not be excluded if he or she is also "an adult

victim in a criminal trial where the prosecutor agrees with the victim's presence."[4] Utah R.Evid. 615(1)(d). Rule 615, which was last amended in 1992, plainly addresses the issue of exclusion, and to the extent that it conflicts with section 78–7–4, legislatively enacted in 1951, the rule supersedes the statute. *See* note 3. *See also State v. Banner,* 717 P.2d 1325, 1333 (Utah 1986) (discussing interplay between rule of evidence and statute, without reference to then-recently revised Utah Const. art. VIII, § 4). Accordingly, we hold that the trial court acted properly in refusing to exclude the victim from the courtroom in this case.[5]

## ADMISSION OF EVIDENCE

■■■ Finally, defendant argues that the trial court erred in admitting testimony of the victim's mother concerning the victim's behavior following the incident. Where the underlying facts are not in dispute, we review the trial court's decision to admit evidence under a correction of error standard. *State v. Ramirez,* 817 P.2d 774, 781–82 (Utah 1991); *Provo City v. Warden,* 844 P.2d 360, 365 (Utah App.1992). *See also State v. Thurman,* 846 P.2d 1256, 1270–71 & n. 11 (Utah 1993).

■■■ Defendant claims that the mother's testimony was irrelevant to the central issue of whether the victim consented to the sexual encounter, and that even if relevant it was substantially more prejudicial than probative. The State argues that the evidence was relevant to show that the victim had suffered a traumatic experience, thereby bolstering her testimony that she had been raped.[6]

---

**3.** The Supreme Court's rulemaking power is now established in article VIII, section 4, of the Utah Constitution, which states that, subject to legislative override by two-thirds vote of both houses, "[t]he Supreme Court shall adopt rules of procedure and evidence for use in the courts of the state." Utah Const. art. VIII, § 4. *See also* Utah Code Ann. § 78–2–4(1) (1992).

**4.** The only apparent exception to this rule allows the trial court to "exclude or excuse a victim from the courtroom if the victim becomes disruptive." Utah R.Evid. 615(2).

**5.** Defendant also claims that Utah Rule of Evidence 615 is unconstitutional, in that it deprives

him of a fair and impartial trial. Where the victim testifies first, as in this case, we wholly fail to see how defendant's rights were violated. We express no opinion on the constitutionality of Rule 615 in a situation where the victim remains in the courtroom but testifies after having the opportunity to hear and observe the testimony of other material witnesses.

**6.** The victim's mother testified to behavioral changes she had noticed in her daughter in the two weeks following the incident. The mother testified that her daughter, in contrast to her previous behavior, was "extremely nervous at times," had a hard time sleeping, did not like to be left alone, and was observed at times to be

Under the Utah Rules of Evidence, all relevant evidence is admissible unless otherwise excluded. Utah R.Evid. 402. "Relevant evidence" is that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Utah R.Evid. 401. *See State v. Gray,* 717 P.2d 1313, 1316 (Utah 1986). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R.Evid. 403. *See Turner v. General Adjustment Bureau, Inc.,* 832 P.2d 62, 69 (Utah App.), *cert. denied,* 843 P.2d 1042 (Utah 1992).

We disagree with defendant's claim that the mother's testimony was irrelevant or unduly prejudicial. Evidence of a drastic change in the victim's behavior is relevant circumstantial evidence that a traumatic experience such as rape has occurred. *See State v. Reser,* 244 Kan. 306, 767 P.2d 1277, 1279 (1989) (reasoning that victim's behavior subsequent to reported assault is relevant corroborative evidence). Any doubts raised by the defense concerning whether or not the incident caused the change concern the weight that should be accorded the evidence, not its admissibility.[7] Nor was the evidence so gruesome, shocking, or sentimental as to be unduly prejudicial. *See State v. Maurer,* 770 P.2d 981, 984 (Utah 1989); *State v. Bartley,* 784 P.2d 1231, 1237 (Utah App.1989). In

fact, the mother's testimony was quite limited, and relatively insignificant in the context of the evidence as a whole. Accordingly, we hold that the trial court did not err in admitting the mother's testimony.

## CONCLUSION

Trial counsel's failure to challenge a particular juror for cause did not constitute ineffective assistance of counsel in this case. In fact, where counsel actively participates in jury selection, we cannot foresee a successful claim of ineffective assistance for failure to challenge a particular juror, given the inherent difficulties in reviewing the decisionmaking process, and the strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. Nor did the trial court abuse its discretion in refusing to exclude the victim from the courtroom after testifying, but instead was required by law to allow her to remain. Finally, we conclude that the trial court did not err in admitting testimony concerning behavioral changes in the victim following her assault, for the purpose of showing that she had suffered a traumatic event. Accordingly, defendant's conviction is affirmed.

RUSSON, J., concurs.

BENCH, Judge (concurring in part, dissenting in part):

I concur in the main opinion's treatment of the issues involving the exclusion of the victim and the admission of evidence. However, I respectfully dissent from the main opin-

---

"shaking." She also testified that her daughter was subsequently unable to concentrate on her studies and dropped out of college.

7. The trial court ruled that the mother's testimony was "clearly relevant," insofar as it related to matters in "reasonably close proximity" to the event at issue. However, the court was also concerned that no foundation had been laid for the mother's ability to make a causal connection between the assault and behavioral changes she had observed months later, and thus limited the scope of her testimony to the two weeks following the incident. However, the mother did testify to some changes observed beyond that limited period.

Whether or not there was adequate foundation for the additional testimony is a separate issue not properly before this court, as defendant's

objection was only as to relevance, not foundation. Nor did defense counsel invoke the court's prior ruling, either by objection or motion to strike, when the mother testified to observations beyond the two week period. Thus, defendant has not preserved that issue for appeal. *See State v. Eldredge,* 773 P.2d 29, 34–35 (Utah), *cert. denied,* 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989).

In any event, the additional testimony, namely that the victim had not returned to school and still had a problem with being alone around strangers, was not prejudicial to defendant's case. *See State v. Verde,* 770 P.2d 116, 122 (Utah 1989) (where evidence improperly admitted, appellant must still show a reasonable likelihood of a more favorable outcome absent the error).

ion's treatment of defendant's ineffective assistance of counsel claim. Because the record is inadequate to decide the question, *State v. Garrett*, 849 P.2d 578, 580 (Utah App.), *cert. denied*, 860 P.2d 943 (Utah 1993), prohibits us from reaching the merits of the claim. *See State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993) (appellate court is bound by prior decision of same court).

In *Garrett*, we held that we can entertain an ineffective assistance of counsel claim on direct appeal "only if the record is adequate to permit a decision." 849 P.2d at 580. We further held that a "trial record is adequate only if 'we are not aware of any evidence or arguments which might be made that [are] not now before us.'" *Id.* (quoting *State v. Humphries*, 818 P.2d 1027, 1029 (Utah 1991)). Garrett claimed, among other things, that jury instructions presented by his trial attorney were erroneous. Because we could look to the record to determine the adequacy of the instructions given to the jury, we addressed the ineffective assistance claim on direct appeal. *Id.*

Garrett also claimed, however, that his trial attorney was ineffective in failing to object to the prosecution's use of its peremptory challenges in a manner he claimed was racially motivated. *Id.* at 581; *see Batson v. Kentucky*, 476 U.S. 79, 89–92, 106 S.Ct. 1712, 1719–20, 90 L.Ed.2d 69 (1986) (racially motivated peremptory strikes are unconstitutional). In analyzing this claim, we stated:

> We do not know from the record before us whether the prosecution in fact had race-neutral reasons for removing the potential jurors because defense counsel did not object. Nor do we know for certain whether defense counsel's failure to object to strikes was deficient performance or trial strategy. Defense counsel may have had [juror language deficiencies] in mind in not objecting to the prosecution's removal of the two potential jurors. It is also conceivable that perceptions of inattentiveness or a lack of sympathy towards defendant—or any myriad of intangible factors—could prompt competent defense counsel to forego asserting a *Batson* challenge. Given the presumption that defense counsel was acting properly, we must

assume that defense counsel also wanted these potential jurors removed and therefore did not raise a *Batson* challenge as a matter of strategy. Any evidence to the contrary is simply not in the record before us. The record is therefore inadequate for us to find on direct appeal that counsel's performance was objectively deficient.

*Id.; see also Humphries*, 818 P.2d at 1029 (generally ineffective assistance of trial counsel claim "cannot be raised on [direct] appeal because the trial record is insufficient to allow claim to be determined").

The record in the present case is similarly deficient as to why defense counsel did not challenge juror Hodges. The main opinion acknowledges the inadequacy of the record. Nevertheless, in direct violation of *Garrett* and principles of stare decisis, the main opinion decides the merits of defendant's claim. The main opinion, echoing *Garrett*, recognizes that

> [o]ur review of counsel's performance "is inherently hampered by our necessary reliance on only the lifeless transcript to assess the dynamic and highly judgmental process of jury selection." Accordingly, we could only speculate as to what trial counsel was thinking when selecting a particular juror, or what effect that selection would play in counsel's overall strategy or plan. Such speculation is manifestly inappropriate, given the strong presumption that counsel's behavior was the product of trial strategy rather than ineptitude.

*See* main opinion, at 1179–1180 (citations omitted). The main opinion goes on to state that "[g]iven the fact that we are ill-equipped to determine what actually occurred, 'we will not second-guess a trial attorney's legitimate use of judgment as to trial tactics or strategy.'" *Id.* at 1180 (citations omitted). This is precisely the reasoning in *Garrett*. Because we are "ill-equipped" to decide what actually occurred at trial, we cannot address this issue on direct appeal.

Perhaps even more troubling than the failure to follow stare decisis is the effect the main opinion's holding will have on defendants who may have legitimate ineffective assistance claims. The main opinion argues that, where the record on direct appeal is

silent, we can rely on the presumption that defense counsel was acting properly and conclusively decide that defense counsel was effective. As used by the main opinion, this presumption will operate to foreclose any opportunity in habeas corpus proceedings for a defendant ever to demonstrate the validity of an ineffective assistance of counsel claim.

Because of the inadequacy of the record, we cannot decide defendant's ineffective assistance of counsel claim on direct appeal.

Under *Garrett* and the principles of stare decisis, we should decline on direct appeal to reach the merits of an ineffective assistance of counsel claim where the trial record is inadequate.