**STATE of Utah, Plaintiff and Appellee,**

v.

**Charles N. STRAIN, Defendant and Appellant.**

**No. 910440–CA.**

Court of Appeals of Utah.

Nov. 17, 1994.

---

H. Wayne Green, Salt Lake City, for appellant.

Jan Graham and J. Kevin Murphy, Salt Lake City, for appellee.

Before BENCH, DAVIS and ORME, JJ.

## OPINION

DAVIS, Judge:

Defendant Charles N. Strain appeals his jury conviction of second degree murder, a first degree felony, in violation of Utah Code Ann. § 76–5–203 (Supp.1994). Strain argues he was denied effective assistance of counsel and that the evidence at trial was insufficient to support the guilty verdict. We affirm.

## FACTS

On October 17, 1981, Detective Richard Casto of the Utah County Sheriff's Office responded to a call that deer hunters had found a partially buried body in Spanish Fork Canyon. The nude body was in a decomposed condition making facial identification impossible; however, judging from the length of the hair and fingernails, the body appeared to be that of a young woman. The medical examiner determined that the victim had been dead for three to six months and that death was by a gunshot wound inflicted by a .22 caliber gun to the back of the head.

After searching the vicinity, the officers found the victim's clothes, a polaroid film wrapper, and a foil polaroid film cover. The shirt and underwear appeared to have been cut from the victim with a knife or scissors. Officers returned to the scene during the latter part of April 1982 for further search of the area and found a Harlequin book which contained two names and addresses: Bobby Strain in McAllen, Texas, and Deanna Jane Dean in Boise, Idaho.

A new detective, Scott Carter, was assigned to the case in late 1985. Dissatisfied with the previous attempts to locate the individuals who were listed in the Harlequin book, Carter mailed letters to these individuals in late January of 1986. The letters stated that the recipients' names and addresses were found in 1981 in a book near a homicide victim and that if anyone in their family had been missing since that time they should contact Detective Carter immediately.

Upon receiving the letter, Evelyn Lemkey called investigators and indicated that her daughter, Deanna Jane Dean, had been missing since 1981. Dr. Orin A. Boyer, Deanna's dentist, compared his dental records with the records of the medical examiner and concluded that the body was that of Deanna Jane Dean. The same conclusion was reached by Dr. Reed L. Holt, a forensic dental examiner for the Utah State Medical Examiner's Office.

Charles N. Strain, Deanna's step-father, was arrested on February 20, 1986 in connection with Deanna's death. After advising Strain of his *Miranda* rights, Detective Peter Bell of the Utah County Sheriff's Office questioned Strain extensively concerning his knowledge of the events leading to Deanna's death. Strain stated initially that he had left McAllen, Texas, on a motorcycle with Deanna in late May of 1981. The two were returning to Deanna's mother's house in Boise, Idaho. (Deanna's mother is Mrs. Lemkey; Mrs. Lemkey and Strain were married at that time.) Strain told Bell that Deanna ran away with a motorcycle gang in El Paso, Texas, and he had not seen her since. Strain claimed that after Deanna left, he drove up to Idaho on a route that bypassed Utah.

In subsequent questioning by Bell, Strain changed his story several times. He first admitted that he did not bypass Utah on his way to Idaho and had in fact traveled through Spanish Fork Canyon. He later stated that Deanna was still with him in Utah, but some drug dealers who had been following them since Texas had killed her in Spanish Fork Canyon. After further alterations in the story, Strain finally confessed to the murder and signed a written statement describing what had happened.

At Strain's first trial, Strain moved to suppress the confession as involuntary because it was the result of alleged coercive threats and promises made by the interrogating officers. Bell had threatened a first degree murder charge and possible execution upon conviction if Strain would not admit his involvement in Deanna's death. If Strain would admit his involvement in the murder, Bell said that the State would bring a charge of second degree murder. The trial court denied the motion to suppress, and Strain was convicted of second degree murder.

On appeal, the Utah Supreme Court ruled that some of Strain's confession may have

been the result of coercive threats and promises and remanded the matter to the district court for additional evidence on the question of the voluntariness of the confession. *See State v. Strain,* 779 P.2d 221, 227 (Utah 1989). After a hearing and several motions on this issue, the trial court held on remand that no statements made by Strain after Bell improperly threatened him with first degree murder charges could be used by the state in a new trial. As a result, only Strain's admission that he passed through Utah with Deanna, and Strain's claim that two drug dealers had killed Deanna were admissible at Strain's second trial.

In February 1991, Strain was again tried and convicted of second degree murder. Strain appeals, arguing that he was denied effective assistance of counsel and that the evidence was insufficient to convict him.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Strain argues that he was denied his constitutional right to effective assistance of counsel at his second jury trial. When, as in this case, the claim of ineffective assistance of counsel is raised for the first time on appeal,[1] we resolve the issue as a matter of law. *State v. Cosey,* 873 P.2d 1177, 1179 (Utah App.), *cert. denied,* 883 P.2d 1359 (Utah 1994). In order to prevail on a claim of ineffective assistance of counsel, Strain must establish both prongs of the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) that his counsel's performance "fell below an objective standard of reasonableness;" *id.* at 688, 104 S.Ct. at 2064; and (2) that counsel's performance prejudiced the defendant. *Id.* at 687, 104 S.Ct. at 2064. Utah has consistently followed the two-prong

*Strickland* test when analyzing ineffective assistance of counsel claims. *State v. Goddard,* 871 P.2d 540, 545 (Utah 1994); *State v. Frame,* 723 P.2d 401, 405 (Utah 1986); *Cosey,* 873 P.2d at 1179; *State v. Tennyson,* 850 P.2d 461, 465 (Utah App.1993).

In proving the first prong of the *Strickland* test, the defendant must point to specific instances in the record where counsel's assistance was inadequate. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. In so doing, the defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. "This court will not second-guess trial counsel's legitimate strategic choices, however flawed those choices might appear in retrospect." *Tennyson,* 850 P.2d at 465 (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *State v. Pascual,* 804 P.2d 553, 556 (Utah App.1991)).

■ In order to prevail on the second prong of the *Strickland* test, the defendant must show that he was prejudiced by the ineffective assistance of counsel. Specifically, defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Further, in cases in which it is "easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," we will do so without addressing whether counsel's performance was professionally unreasonable. *Id.* at 697, 104 S.Ct. at 2069.

Strain argues counsel's performance was inadequate in seven respects: (1) failure to give an opening statement; (2) failure to cross-examine Robert Strain; (3) cross-ex-

---

1. In *State v. Humphries,* 818 P.2d 1027 (Utah 1991), the Utah Supreme Court stated that "ineffective assistance of trial counsel [claims] *should* be raised on appeal if the trial record is adequate to permit decision of the issue and defendant is represented by counsel other than trial counsel." *Id.* at 1029 (emphasis added). The instant case presents a more than adequate record, and defendant is represented by new counsel on appeal. Accordingly, it is appropriate for this court to address Strain's ineffective assistance of counsel claim. *See State v. Cosey,* 873 P.2d 1177, 1180 n.

2 (Utah App.) (noting that *Humphries* requirements were met in that "[d]efendant Cosey has new appellate counsel and the record contains sufficient information, when coupled with the *Strickland* presumption, to definitively decide his claim."), *cert. denied,* 883 P.2d 1359 (Utah 1994); *see also Salt Lake City v. Grotepas,* 874 P.2d 136, 139 n. 3 (Utah App.) ("We are not convinced that a 'silent record' necessarily equals an inadequate record."), *cert. granted,* 883 P.2d 1359 (Utah 1994).

amination of Evelyn Lemkey; (4) cross-examination of Peter Bell; (5) cross-examination of James Gaskill; (6) cross-examination of John P. Riley; and (7) failure to adequately investigate the underlying facts of the case. We consider each of these claims in turn.

### 1. *Failure to Give Opening Statement*

■ Strain's attorney did not present an opening statement at trial. He explained to the court,

> I don't believe that it would be of any benefit to make a long statement. I think that the facts in this case or the concerns or the issues to be decided are fairly well in the minds of the jury now, so I would waive the opening statement and call [the first witness].

Strain argues that his attorney's failure to make an opening statement was prejudicial in that it "would lead a reasonable juror to the conclusion that the defense did not have any evidence, did not know what strategy it was pursuing and had no opinion as to the relevance and significance of the evidence the State was going to offer."

Strain does not cite any authority for the proposition that failure to give an opening statement is prejudicial, and in fact, recent case law suggests the opposite. In *State v. Harry*, 873 P.2d 1149 (Utah App.1994), this court ruled that "[e]ven if we did determine that trial counsel forgot to deliver an opening statement, we would still conclude that such failure did not prejudice [defendant]. There are several circumstances where it may be advantageous for counsel to forego an opening statement." *Id.* at 1154. Accordingly, counsel's failure to give an opening statement in this case does not constitute ineffective assistance of counsel.

### 2. *Cross–examination of Robert Strain*

■ Robert Strain, Strain's son, testified at the second trial that Deanna left McAllen, Texas, with his father in June of 1981. He stated that his father took a .22 caliber gun with him on the trip and had recently used a polaroid camera.[2] In addition, Robert's description of the clothes that Deanna was wearing when she left on the trip matched the clothing found at the site of the murder. Strain's attorney declined to cross-examine Robert.

Strain argues that the complete failure to cross-examine Robert constituted ineffective assistance of counsel. For example, Strain points out that at the preliminary hearing, Robert claimed to be unable to recall whether Strain took a gun with him when he left Texas. Additionally, at the first trial, Robert only testified that the gun Strain took with him from Texas in 1981 was similar to the gun found when Strain was arrested in 1986; he did not testify regarding the particular caliber of the gun owned by Strain in 1981. Finally, Strain's counsel at the first trial obtained an admission from Robert that "my memory isn't too well" and that changes in his testimony from the preliminary hearing to trial may have been due to conversations with Mrs. Lemkey.

After review of the record of the first trial, we conclude that counsel's decision to forego cross-examination of Robert fell within the range of legitimate trial strategies. Questions at the first trial regarding Robert's memory resulted in his affirmance that he now had a much better recollection of the events surrounding Deanna and his father's departure from Texas. In addition, Robert bolstered his testimony with further detail. Therefore, counsel at the second trial could have reasonably determined that cross-examination would not only be fruitless but also

---

**2.** Strain incorrectly states that Robert testified at the second trial that Strain possessed a polaroid camera at the time he left Texas with Deanna. Robert simply said that Strain had *used* a polaroid camera in the months preceding Deanna's death and that "maybe" he left Texas with "a camera." Counsel's decision not to cross-examine Robert on this point may have been based upon the vagueness of the testimony and a desire to avoid emphasizing and clarifying the testimo-

ny. It does not appear to have been mere oversight because counsel returned to the subject of possession of the camera in his closing statement. Counsel argued to the jury that the fact that there were only two polaroid pictures found among Strain's possessions suggested that he did not own the camera in question. In addition, Strain testified that he did not own a polaroid camera.

potentially harmful. Consequently, counsel's failure to cross-examine Robert might be considered sound trial strategy and does not constitute ineffective assistance of counsel. *See State v. Tennyson*, 850 P.2d 461, 468 (Utah App.1993) (noting that given *Strickland*'s strong presumption of competence, "we need only articulate some plausible strategic explanation for counsel's behavior").

### 3. *Cross-examination of Mrs. Lemkey*

■ Mrs. Lemkey testified at the second trial that Strain visited her in late June or early July of 1981 and told her that Deanna had run away from him on the way up to Idaho. She said that after further questioning about Deanna's whereabouts, Strain told her, "Take my word for it, she will never get ahold of you." Lemkey responded that if that were so, Strain must have killed her, and she would like to know where the body was. Strain's alleged response was, "If I did, you or nobody else will ever know." Lemkey also testified regarding two polaroid photographs that were among Strain's personal property in a storage shed. The State argued that the polaroid pictures were taken at the location where Deanna's body was found and that they were taken at the approximate time Deanna was killed. Lemkey stated that no one other than herself had access to the nightstand containing the pictures because after Strain's possessions were removed from the storage shed they were locked in her garage. Strain's counsel did not cross-examine Lemkey extensively; the principal result of the questioning was an admission that Lemkey and Strain's marriage was "stormy" and that they did not get along well.

Strain claims counsel's cross-examination of Mrs. Lemkey was inadequate because he: (1) did not elicit the fact that Deanna had a history of running away, (2) did not press Mrs. Lemkey on the fact that Robert said anyone could have had access to the nightstand containing the pictures, and (3) did not question Mrs. Lemkey about her response to Strain's alleged suggestion that he killed Deanna.

We can surmise several strategic reasons for limiting cross-examination of Mrs. Lemkey, including: avoiding the appearance of personal attacks upon the murder victim or the murder victim's mother, eliminating the opportunity for re-emphasis of testimony, and preventing Mrs. Lemkey from adding further detail to or otherwise bolstering her testimony. Further, counsel appears to have merely elected a different strategy at the second trial than that opted for by the attorney at the first trial. In the place of extensive cross-examination of Mrs. Lemkey, counsel had Strain testify as to his differing recollection of the events. This court will not second-guess counsel's legitimate use of trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Harry*, 873 P.2d at 1154; *State v. Tennyson*, 850 P.2d 461, 465 (Utah App. 1993); *State v. Pascual*, 804 P.2d 553, 556 (Utah App.1991).

### 4. *Cross-examination of Peter Bell*

■ Detective Peter Bell testified that Strain changed his story several times when he was questioned about the trip with Deanna and her subsequent disappearance. Strain claims that trial counsel's cross-examination of Bell was deficient because counsel did not press him about Strain's condition during the interrogation. In particular, Strain asserts that he had not eaten or slept well in the several days before and during questioning. In addition, although counsel asked Bell to produce a tape recording or the notes of Strain's first post-arrest interview, Strain argues that counsel "never followed up" on that request.

While counsel did not cross-examine Bell with respect to Strain's condition during the interrogation, evidence of Strain's condition was put before the jury through Strain's testimony. As for counsel's failure to "follow up" on his request for a tape recording or notes of the first post-arrest interview, counsel argued in his closing statement that *Bell's* failure to produce the tape or notes suggested that Bell's testimony should be discredited. Thus, there appear to have been strategic reasons for counsel's trial decisions, and we cannot conclude that counsel's performance fell without the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

### 5. Cross-examination of James Gaskill

 James Gaskill, an Assistant Professor at Weber State University, testified that the markings on the bullets found in Deanna's skull could have been made by the .22 caliber gun taken from Strain upon his arrest. On cross-examination, Gaskill conceded that "any one of 1,000 or 2,000 or 5,000 guns" could have left similar markings on the bullets. Strain contends that this line of questioning was deficient because counsel did not object to the evidence under Rules 702 and 703 of the Utah Rules of Evidence. Strain argues that these rules require "sufficient foundation to demonstrate that the findings were numerically significant." In other words, Strain objects to the fact that counsel did not discover from Gaskill what percentage of the total number of guns owned in this country could have made the markings found on the bullets that killed Deanna.

Strain does not cite any precedent or provide any legal analysis in support of his contention that Rules 702 and 703 require a showing that testimony is "numerically significant" to be admissible and his counsel, on cross-examination, established the numerical significance (or insignificance) of the testimony. We therefore summarily reject this contention. *See State v. Amicone*, 689 P.2d 1341, 1344 (Utah 1984); *State v. Price*, 827 P.2d 247, 248–50 (Utah App.1992).

### 6. Cross-examination of John P. Riley

 John P. Riley, a special agent with the Federal Bureau of Investigation, testified regarding his comparison of the two bullets taken from the victim's head [3] and a bullet taken from the clip of the gun removed from Strain upon arrest. Riley employed two techniques in comparing the bullets, a "neutron activation analysis" to analyze for antimony, copper, and arsenic; and an "ICP" (an acronym for "inductibly coupled plasma atomic emissions patromotry") to analyze for silver, bismuth, and tin. Riley testified that through analysis of these trace elements, it is possible to determine whether a bullet could have come from a specific box of ammunition, or whether two or more bullets could have come from the same box of ammunition. Riley concluded that one of the bullets taken from the victim's body and the bullet taken from the gun Strain possessed when he was arrested could have come from the same box of ammunition.

Strain argues that counsel's performance on cross-examination of Riley was deficient because he did not insist upon a showing that the techniques employed by Riley meet the relevant criteria for admission of scientific data pursuant to Rule 703 of the Utah Rules of Evidence. In light of Riley's training, his twenty-three years of experience in the Federal Bureau of Investigation laboratory, and his testimony that he has done "extensive research" with respect to the examination of bullets and "analyzed hundreds of boxes of ammunition in [sic] literally tens of thousands of bullets to determine what the composition makeup of a box of bullets is," counsel could have legitimately determined that a challenge to Riley's techniques would not have been productive. Moreover, such a challenge might well have resulted in enhancing Riley's credibility before the jury. We therefore reject Strain's claim of ineffective assistance of counsel because we cannot conclude that "counsel's action could not conceivably constitute legitimate trial tactics." *State v. Tennyson*, 850 P.2d 461, 469 (Utah App.1993) (citations omitted).

 Even if Strain's objection had been well taken, the second prong of the *Strickland* analysis requires that Strain demonstrate that he has been prejudiced by counsel's trial error. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. We determine as a matter of law that Strain has not met this burden. On cross-examination, counsel obtained several concessions regarding the limitations of Riley's techniques that undermined the significance of his testimony. In addition, Riley's testimony was not a pivotal part of the State's case. Therefore, it is unlikely that the result in this case would have been different even if, assuming the best of circum-

---

**3.** One bullet was found inside the victim's skull and the other was recovered from the victim's hair.

stances, counsel had objected to Riley's testimony and all or part of it had been ruled inadmissible.

### 7. *Failure to Investigate*

Strain argues that counsel's failure to investigate several aspects of the case was ineffective assistance of counsel. He identifies several areas where further investigation was allegedly necessary including: (1) Robert Strain's statement at the first trial that he was at a party where he "heard a conversation as to the question of her [Deanna] being alive [after June of 1981] was discussed [sic];" (2) questions about access to the photos found in Strain's nightstand; (3) the issue of why Mrs. Lemkey did not follow up on Strain's alleged suggestion that he killed Deanna; (4) Bell's apparent failure to make a recording of Strain's first post-arrest interview; and (5) Strain's story that he had recently purchased the gun he possessed when arrested.

The Utah Supreme Court has held that "[i]f counsel does not adequately investigate the underlying facts of a case, including the availability of prospective defense witnesses, counsel's performance cannot fall within the 'wide range of professional assistance'" referred to in *Strickland. State v. Templin*, 805 P.2d 182, 188 (Utah 1990). In *Templin*, the court ruled that it was ineffective assistance of counsel in a rape trial to fail to investigate and call as a witness an individual who would have testified that she saw the defendant and the victim kissing passionately within an hour of the alleged rape.

In contrast to *Templin*, Strain does not detail what further investigation of the conversation overheard by Robert Strain would reveal. In addition, in the admissible portion of Strain's confession he stated that Deanna was killed in June of 1981 by two drug dealers. It would have made little sense for counsel to spend valuable trial preparation time tracking down speculation and rumors concerning sightings of Deanna when Strain had already confessed to his knowledge that she was murdered in June of 1981 by two drug dealers.

Strain's other claims of inadequate investigation are also without merit. As discussed, the approach taken at trial with respect to access to the photos, Mrs. Lemkey's testimony about Strain's alleged incriminating statements and Mr. Bell's apparent failure to make a recording of the first post-arrest interview are within the range of legitimate trial strategies. With regard to the claim that counsel should have attempted to trace the purchase of Strain's .22 caliber gun, Strain testified at trial that he purchased it from an unknown individual at an unnamed truck stop in Portland, Oregon. Counsel might have validly determined that trial preparation time would be better spent on other avenues more likely to assist defendant.

In addition, even if we were to determine that counsel's failure to investigate the origin of Strain's .22 caliber gun constituted an objectively deficient performance on the part of counsel, we would not conclude that this error was prejudicial. In deciding whether a case should be remanded for retrial on the basis of ineffective assistance of counsel, "an appellate court should consider the totality of the evidence, taking into account such factors as whether the errors affect the entire evidentiary picture or have an isolated effect and how strongly the verdict is supported by the record." *Templin*, 805 P.2d at 187. In this case, the evidence was not conclusive that the .22 caliber gun possessed by Strain at the time of his arrest was the gun used to kill Deanna. Strain's counsel emphasized this point during cross-examination.

After extensive review of the records of both trials, we conclude there is no reason to disturb the strong presumption that Strain's counsel's performance at the second trial was within the wide range of reasonable professional assistance. It is axiomatic that "[t]he purpose of requiring effective assistance of counsel is to better ensure that a defendant receives a fair trial." *State v. Tyler*, 850 P.2d 1250, 1257 (Utah 1993). Upon retrial, Strain's counsel vigorously cross-examined a witness, James Carrick, who alleged that Strain had confessed the crime to him; called another witness to the stand to testify that

Carrick's testimony was not credible; challenged the significance of the expert testimony given by Gaskill and Riley; and put Strain on the stand to testify regarding his version of the events preceding Deanna's disappearance. In his closing statement to the jury, counsel thoroughly reviewed the weaknesses in the State's case and argued that the State had not met its burden of proof beyond a reasonable doubt. We therefore conclude that counsel's representation was adequate and that Strain received a fair trial.

## INSUFFICIENCY OF THE EVIDENCE

 Strain argues that the evidence presented at his second trial was insufficient to prove beyond a reasonable doubt that he knowingly and intentionally caused Deanna's death. A challenge to the sufficiency of the evidence presents the defendant with a heavy burden. He must first marshal all the evidence supporting the jury's verdict and then demonstrate how this evidence, even viewed in the most favorable light, is insufficient to support the verdict. *State v. Pilling,* 875 P.2d 604, 607–08 (Utah App.1994); *State v. Scheel,* 823 P.2d 470, 472 (Utah App.1991); *State v. Perdue,* 813 P.2d 1201, 1207 (Utah App.1991) (citation omitted). We will reverse on the basis of insufficiency of the evidence "only when the evidence is so inconclusive or so inherently improbable that 'reasonable minds must have entertained a reasonable doubt' that the defendant committed the crime." *State v. Goddard,* 871 P.2d 540, 543 (Utah 1994) (quotation omitted).

 In essence, Strain's insufficiency of the evidence claim is an extension of his ineffective assistance of counsel claim. He contends that counsel's "missed opportunities at cross-examination," failure to object to scientific evidence, and failure to investigate certain aspects of the case so affected the evidentiary picture at trial that the evidence was insufficient to convict him. We have determined that counsel's performance was not deficient. Therefore, we reject Strain's insufficiency of the evidence claim. Additionally, we note that the uncontroverted testimony that Deanna died from a gunshot wound entering the back of her head appears to satisfy both the "death by criminal means"

and "requisite intent" elements of the crime which Strain argues were not established for the jury.

## CONCLUSION

Strain's claim of ineffective assistance of counsel fails because he cannot establish that counsel's performance objectively fell below reasonable professional standards. In addition, we dismiss Strain's insufficiency of the evidence claim because it is derivative of the ineffective assistance of counsel claim. Accordingly, we affirm.

ORME, J., concurs.

BENCH, Judge (concurring in the result):

Defendant has failed to demonstrate that the evidence at trial was so "inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime. . . ." *State v. Dunn,* 850 P.2d 1201, 1212 (Utah 1993). I therefore concur in the rejection of defendant's challenge to the sufficiency of the evidence.

Although I concur in affirming the conviction, I disagree with the majority's attempt to resolve defendant's claims of ineffective assistance of counsel. The record is silent on why trial counsel conducted the defense as he did. For example, we can only guess why counsel did not cross examine some of the prosecution's witnesses. Ordinarily, we cannot definitively address an ineffective assistance claim raised for the first time on appeal. *State v. Humphries,* 818 P.2d 1027, 1029 (Utah 1991); *State v. Garrett,* 849 P.2d 578, 580 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993); *Salt Lake City v. Grotepas,* 874 P.2d 136 (Utah App.) (Bench, J., dissenting), *cert. granted,* 883 P.2d 1359 (Utah 1994).

In view of the silent record, defendant is not precluded from raising his ineffective assistance claims in a post-conviction proceeding. "Where an issue going to the fundamental fairness of a trial involves nonrecord events, Rule 65B may be the only means whereby a defendant can obtain a fair adjudication of the issue." *Gardner v. Holden,* No.

910500, slip op. at 9, 1994 WL 636448 (Utah Nov. 10, 1994). I would not attempt to address defendant's ineffective assistance claims on a silent record.