STATE of Utah, Plaintiff and Appellee,

v.

Timothy L. BETHA, Defendant and Appellant.

No. 970150–CA.

Court of Appeals of Utah.

April 23, 1998.

---

Richard G. Uday, Salt Lake City, for Appellant.

Jan Graham and Barnard N. Madsen, Salt Lake City, for Appellee.

Before WILKINS, Associate P.J., and GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Timothy Lamont Betha appeals from a jury verdict convicting him of aggravated sexual abuse, a first degree felony, in violation of Utah Code Ann. § 76–5–405 (1995); aggravated burglary, a first degree felony, in violation of Utah Code Ann. § 76–6–203 (1995); aggravated kidnaping, a first degree felony, in violation of Utah Code Ann. § 76–5–302 (1995); aggravated assault, a second degree felony, in violation of Utah Code Ann. § 76–5–103 (1995); and criminal mischief, a third degree felony, in violation of Utah Code Ann. § 76–6–106 (1995). We affirm.

## BACKGROUND [1]

The victim in this case, Shani–Rae Denny, came to Utah from Washington in October 1995 to live with defendant, a bodybuilder who had twice won the "Mr. Utah" bodybuilding competition. However, their relationship quickly deteriorated. On November 21, 1995, Denny asked defendant to move out of her apartment after he lost control and choked her during an argument. Defendant left, giving Denny the keys to the apartment. On November 28, 1995, defendant followed Denny into her garage as she arrived home from work, threw her to the ground, punched her, and then insisted the couple get back together. Denny, however, did not allow him

---

1. The evidence, and all reasonable inferences drawn therefrom, is recited in a light most favorable to the jury's verdict. *See State v. Dunn*, 850 P.2d 1201, 1205 (Utah 1993).

back in her apartment. Instead, she filed for a protective order prohibiting defendant from contacting her or coming to her home or work. The protective order was served on defendant on December 8, 1995.

Five days later, on December 13, 1995, defendant borrowed a friend's Jeep, took another friend's nine millimeter Beretta handgun, and entered Denny's apartment. Before Denny arrived, defendant slashed her furniture and clothing with a knife. Defendant turned up the heat in the apartment so the sound of the furnace would mask any other noise.

At about 9:30 p.m., Denny came home and opened the door to her apartment. Defendant grabbed her from behind, put her in a choke hold, held the gun to her head, and told her he would kill her if she made any noise.

After a thirty to forty-five minute conversation, during which defendant showed Denny the loaded gun and bullets and said, "these bullets can do a lot of damage," defendant asked Denny to go into the bedroom. Denny asked to use the bathroom first and managed to hide a can of pepper mace under her sweater as she got up from the living room floor. Defendant entered the bathroom, holding the gun, and Denny pointed the mace at his face and sprayed. Defendant fired the gun, missing Denny. Defendant then "wrestled" with Denny on the floor and tried to grab the can of mace. While defendant was on top of Denny, he struck her on the head repeatedly with the butt of the gun, opening a gash in her scalp. Denny struggled free and attempted to escape from the apartment; however, defendant caught her in the living room and again struck her with the butt of the gun, this time opening a gash above her right eye.

Denny tried to attract attention by screaming and stomping on the floor. Fearful that someone might hear her, defendant grabbed Denny, hit her several times with his hand, forced her to go outside, and dragged her down the apartment complex's cement stairs, scraping her bare feet and causing them to bleed. Defendant then forced Denny into the borrowed Jeep, where he again hit her several times with the gun, breaking her nose, spraying blood onto the windows of the Jeep, and severely bruising Denny's face and left shoulder.

Defendant then drove to an isolated area in Sandy, parked, and forced Denny to remove her clothes, telling her he wanted to have sex with her. Denny replied, "You have got to be kidding." Defendant drove Denny to several different locations, including both Big and Little Cottonwood Canyons. Despite Denny's protests and repeated requests to be taken to an emergency room, defendant sexually assaulted her four separate times during the episode.

Defendant told Denny he would take her to an emergency room, but did not want to take her to one in Salt Lake because he wanted a chance to escape before police could find him. He then drove Denny to Provo. However, before taking Denny to a hospital, defendant drove to an apartment complex, where he hid the gun. Defendant then drove to Utah Valley Regional Medical Center, but smoked a cigarette before taking Denny in. At 3:30 a.m. on December 14, approximately six hours after defendant first assaulted Denny, defendant carried her into the emergency room, placed her in a wheelchair, and left.

Defendant then changed his clothes, woke up several friends, and told them he thought he had shot Denny. Defendant and two friends returned to the Jeep, where defendant tried to wipe off the blood with the clothes he had worn during the assault. Defendant then placed his bloody clothes, a glove Denny had used to absorb blood from the gash over her eye, and Denny's bra and underwear into a plastic bag, which he threw into a dumpster. On the advice of his friends, defendant then turned himself in to police at Utah Valley Regional Medical Center.

Defendant was charged with aggravated sexual assault, aggravated burglary, aggravated kidnaping, aggravated assault, and criminal mischief. At a trial held in October 1996, the jury found defendant guilty on all five counts. Defendant now appeals.

## ISSUES

Defendant raises four issues on appeal. First, defendant argues the trial court erred in admitting four graphic photographs of Denny and her injuries. Second, defendant claims the trial court erred in admitting evidence of a prior conviction. Third, defendant argues that, under the facts of this case, aggravated assault is a lesser included offense of aggravated burglary, and that he was impermissibly convicted and sentenced for both crimes. Finally, defendant argues his convictions should be reversed under the cumulative error doctrine.

## ANALYSIS

### I. Admission of Photographs

Defendant argues the trial court committed reversible error in admitting four graphic photographs of Denny's injuries. Before trial, defendant moved to suppress these and other potentially prejudicial photographs, together with a videotape of Denny, all of which were taken in the hospital emergency room the morning of December 14, 1995. After a hearing on the motion, the trial court excluded three of the State's photos as cumulative, and excluded the videotape as unduly inflammatory. The court, however, did allow four photos, State's Exhibits 34–37, which display Denny's injuries from four different angles. The trial court stated that the photographs were "not particularly inflammatory," that they were "illustrative of the victim's condition," and that they would not unduly prejudice defendant. Moreover, the court held the photographs to be "highly relevant" to and "highly probative" of whether the injuries were intentionally inflicted.

Defendant first argues that the admitted photos are gruesome and thus should have been excluded as more prejudicial than probative. He further claims that the photos had no evidentiary value because they were not essential evidence on disputed issues, that they were cumulative, and that they confused the issues before the jury.

The State counters that the photos are not gruesome, as the term is defined in Utah case law. The State also claims the challenged photos were unusually probative of

and essential to establishing whether defendant intended to injure Denny and whether she consented to sexual intercourse.

▪ In reviewing a trial court's ruling on a motion to suppress evidence, we will not overturn the trial court's factual findings absent clear error. *See State v. Steward*, 806 P.2d 213, 215 (Utah Ct.App.1991). However, we will review the trial court's conclusions of law for correctness. *See id.* Whether a photograph is gruesome is a question of law which we review for correctness. *See State v. Jiron*, 882 P.2d 685, 690 (Utah Ct.App. 1994), *cert. denied*, 892 P.2d 13 (Utah 1995).

▪ Rule 403 of the Utah Rules of Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Utah R.Evid. 403. This rule requires a trial court to determine whether the potential for unfair prejudice if the evidence is admitted outweighs its probative value. *See State v. Dibello*, 780 P.2d 1221, 1229 (Utah 1989). In the usual case, there is a presumption in favor of admission. *See id.* However, some categories of evidence which are "uniquely subject to being used to distort the deliberative process and improperly skew the [trial's] outcome" require a showing of "unusual probative value" before admission. *State v. Lafferty*, 749 P.2d 1239, 1256 (Utah 1988). Gruesome photographs are one such category of evidence. *See Dibello*, 780 P.2d at 1229.

Most Utah cases which discuss the admission of gruesome photographs involve depictions of fatal wounds. *See State v. Allen*, 839 P.2d 291, 303 (Utah 1992) (holding photos not gruesome where they did not depict open wounds or excessive blood); *State v. Cobb*, 774 P.2d 1123, 1125 (Utah 1989) (holding photo of corpse not gruesome where body had been washed and wounds sutured, photo was dull, and victim's head was not shown); *State v. Bishop*, 753 P.2d 439, 476–77 (Utah 1988) (holding photo showing hole in child's

skull and pair of tongs pulling skin away to reveal brain cavity gruesome and potentially greatly prejudicial); *Lafferty,* 749 P.2d at 1257 (holding photos of dead baby's gaping neck wound, taken after baby had been repositioned in crib for photos, were gruesome, as were photos of mother shown in pool of blood). However, this court recently addressed whether photos of non-fatal injuries could be gruesome and defined what is "legally gruesome." *See Jiron,* 882 P.2d at 690.

In *Jiron,* the State argued that a photograph of non-fatal anal injuries on a corpse were probative both of whether the injuries were accidental or caused by an intentional violent act and of whether the victim had consented to sexual contact. The defendant argued the photos should have been excluded as gruesome. This court explained that a photograph is not necessarily gruesome "merely because it depicts injury to a[n] . . . area of a person's body." *Id.* Rather, the word "gruesome" "connotes something much stronger than being offensive, embarrassing, or graphic. Something is gruesome only if it 'inspir[es] horror or repulsion.' Synonyms include 'grisly' and 'hideous.'" *Id.* (quoting *Webster's Third New International Dictionary* 1005 (1986)).

After reviewing the case law, the *Jiron* court held that the photograph of a murder victim's non-fatal injuries was not "gruesome," that the Rule 403 balancing test therefore applied, and that the defendant was thus required to overcome the "presumption . . . that the evidence is admissible." *Id.*

■ Applying the foregoing analysis to this case, we conclude that, as a matter of law, the disputed photographs are not gruesome. Although medical testimony established the location of Denny's wounds, the photographs reveal the extent of her injuries. Exhibit 38 shows a relatively blood-free cut on the back of Denny's head and is shown from a distance. Exhibit 36, like the photos

in *Cobb* and *Allen,* is clean and blood-free, showing only severe bruising on the left side of Denny's face, and clearly showing the nose fracture. Finally, Exhibits 34 and 35, though bloody and graphic, show Denny only *after* her blood-soaked clothing had been removed and after most of the dried blood had been removed from her hair, face and neck. None of the photos exaggerate the nature of Denny's injuries or reveal those injuries in an unduly offensive manner. Thus, they neither unnecessarily inspire "horror or repulsion," nor are they unnecessarily "grisly" or "hideous." They merely accurately reflect the facial, head, and neck injuries of an "aggravated assault" victim, and the trial court did not err in applying the traditional Rule 403 balancing test to their admission.[2]

■ In addition, we agree with the trial court that the probative value of the photos was not outweighed by potential prejudice. The photographs are highly relevant to the issues of intent and consent. Defendant argues that facts shown by the photographs could have been established by other means, such as medical testimony, and that he had stipulated to the fact that Denny's injuries were extensive. However, defendant's theory of the case was that Denny consented to sexual relations and that any injuries she sustained were accidental. As in *Jiron,* these photos were essential in helping the jury resolve whether the wounds were caused intentionally or accidentally by defendant and whether Denny, having been so extensively injured, would have consented to sex with defendant. *See Jiron,* 882 P.2d at 690 (holding photos relevant to issues of intent and consent). Furthermore, the photos were not merely cumulative and they did not confuse the issues before the jury. To the contrary, the photos are not duplicative of one another, the trial court excluded other photos which it deemed cumulative, and the challenged photos more clearly show the ex-

---

2. Although not dispositive, we note that no Utah case has held photographs of non-fatal injuries to be gruesome. Moreover, in thirty years of Utah case law addressing the gruesome photographs issue, the Utah Supreme Court has found photos to be gruesome in only six cases and has reversed for harmful error in only two of those six.

*See State v. Rocco,* 795 P.2d 1116, 1117 (Utah 1990); *Dibello,* 780 P.2d at 1229–1230; *Bishop,* 753 P.2d at 476–477; *Lafferty,* 749 P.2d at 1257; *State v. Cloud,* 722 P.2d 750, 753–754 (Utah 1986); *State v. Poe I,* 21 Utah 2d 113, 441 P.2d 512, 514–15 (Utah 1968).

tent of Denny's injuries than did Exhibit 37, which was not challenged on appeal.

In sum, we conclude that the disputed photographs are not gruesome and that their probative value was not outweighed by the danger of unfair prejudice. Accordingly, the trial court did not err in admitting them under Rule 403.

## II. Admission of Prior Conviction

Defendant claims the trial court committed reversible error in allowing the prosecution to question him about a prior conviction. Before trial, defendant moved to suppress evidence of his Washington convictions for rape in 1990 and for felony assault in 1987. The State sought to introduce this evidence to demonstrate that Denny had learned of the convictions shortly before the assault and confronted defendant with this knowledge. The State argued the evidence was relevant to both Denny's and defendant's states of mind and to defendant's intent.

The trial court allowed admission of only the 1990 rape conviction, finding that conviction highly relevant and more probative than prejudicial under Rule 609 of the Utah Rules of Evidence. However, the trial court ruled that even that evidence could only be presented for impeachment purposes during the State's cross-examination of defendant on rebuttal—not in its case-in-chief—and the State could not disclose the actual crime underlying the conviction.

Defendant, when testifying on direct, referred to an emotional telephone conversation with Denny a few days before the incident. On cross-examination, defendant testified he had been convicted of a third-degree felony in 1990 and that Denny did not know about it prior to December 1995.

Defendant argues the trial court failed to undertake the Rule 609 analysis set forth in *State v. Banner*, 717 P.2d 1325, 1334–35 (Utah 1986), and that its ruling "permitted rash speculation as to the nature of the prior conviction in question." [3]

The State contends the trial court properly applied the Rule 609 analysis suggested in *Banner* by balancing the probative value of the evidence against its potential for prejudice and then strictly limiting the manner in which the evidence could be presented.

Although a trial court's determination on the admissibility of evidence is a question of law reviewed for correctness, *see State v. Diaz*, 859 P.2d 19, 23 (Utah Ct.App.1993), *cert. denied*, 878 P.2d 1154 (Utah 1994), its decision is "generally accorded 'a good deal of discretion' by an appellate court." *State v. Stevenson*, 884 P.2d 1287, 1290 (Utah Ct.App. 1994) (quoting *State v. Pena*, 869 P.2d 932, 938 (Utah 1994)), *cert. denied*, 892 P.2d 13 (Utah 1995). " '[I]n reviewing a trial court's decision to admit evidence, we will not reverse that ruling unless a substantial right of the party has been affected.' " *Diaz*, 859 P.2d at 23 (citation omitted).

### 1. Rule 609 Analysis by Trial Court

Defendant claims that the trial court erred in failing to undertake a *Banner* analysis of whether evidence of his prior conviction was more probative than prejudicial and that allowing such evidence substantially prejudiced his right to a fair trial.

Rule 609 of the Utah Rules of Evidence provides, in relevant part:

(a) For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than the accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by

---

**3.** Defendant also argues the trial court erred by not giving a limiting instruction during the State's cross-examination of defendant. Defendant, however, provides neither analysis nor reference to case law or rule which requires a trial court to give a limiting instruction during cross-examination. Moreover, defendant concedes that the trial court did provide a limiting instruction prior to jury deliberation, and defendant not only offered the particular instruction but also voiced no objection to it when it was read. Because this court " 'is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research,' " *Bishop*, 753 P.2d at 450 (quoting *Williamson v. Opsahl*, 92 Ill.App.3d 1087, 48 Ill.Dec. 510, 511, 416 N.E.2d 783, 784 (1981)), we decline to consider this argument further.

death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused.

Utah R.Evid. 609(a)(1). In *State v. Johnson,* 748 P.2d 1069, 1075 (Utah 1987), the Utah Supreme Court stated that "evidence of other crimes must be reasonably necessary and highly probative of a material issue" in order to overcome its prejudicial effect. To determine whether the probative value of a prior conviction outweighs its potential prejudice under Rule 609, the supreme court has suggested the following factors:

"[1] the nature of the crime, as bearing on the character for veracity of the witness.

[2] the recentness or remoteness of the prior conviction....

[3] the similarity of the prior crime to the charged crime, insofar as a close resemblance may lead the jury to punish the accused as a bad person.

[4] the importance of credibility issues in determining the truth in a prosecution tried without decisive nontestimonial evidence....

[5] the importance of the accused's testimony, as perhaps warranting the exclusion of convictions probative of the accused's character for veracity."

*Banner,* 717 P.2d at 1334 (citation omitted). Our review of the record reveals that, to the extent these criteria are applicable, the trial court complied with the *Banner* analysis. The trial court considered the nature of the crime, and, recognizing that the crime charged and the 1990 conviction were for similar acts, did not allow the specific 1990 crime to be adduced at trial. The trial court also considered the remoteness of the prior convictions and concluded that defendant's 1987 conviction was too remote to be probative. The trial court further considered the fact that the case turned, in part, on "[the] defendant['s] and the alleged victim's credibility." Thus, the trial court considered the

*Banner* factors in its decision to allow the prior conviction.

Furthermore, evidence presented at trial demonstrated that defendant had lied to the victim about his prior convictions; thus, evidence of the prior conviction did, as contemplated by Rule 609, relate to defendant's character for veracity and truthfulness. That evidence also clarified the reason for Denny's agitation with defendant prior to the assault. Because the credibility of the witnesses turned in part on their testimony, evidence of defendant's prior conviction met the Rule 609 requirement of relevancy.

### 2. Invited Error Doctrine

■ Defendant also contends that permitting evidence of his conviction, without *specifically* allowing the jury to know the nature of the conviction, was erroneous. We find this argument to be without merit.

"[O]n appeal, a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *Dunn,* 850 P.2d at 1220. During the hearing on defendant's motion to exclude, defendant successfully urged the trial court to restrict the evidence of defendant's prior conviction to cross-examination and to further restrict discussion to the fact of a conviction only, excluding any reference to the actual crime underlying the conviction. Defendant now argues that the restriction by the trial court "permitted rash speculation as to the nature of the prior conviction in question." However, because it was defendant's counsel who requested the court's ruling, defendant cannot now be heard to complain.

### III. Lesser Included Offense

■ We next consider whether defendant was improperly convicted of a lesser included offense under Utah Code Ann. § 76–1–402(3)(a) (1995). Defendant argues that, under the facts of this case, aggravated assault is a lesser included offense of aggravated burglary, and, therefore, he cannot be separately convicted and punished for the aggravated assault charge.

■ Whether one crime is a lesser included offense of another is a question of law

reviewed for correctness. *See State v. Jaimez*, 817 P.2d 822, 827 (Utah Ct.App.1991); *see also State v. Yates*, 918 P.2d 136, 138 (Utah Ct.App.1996).

A lesser included offense is statutorily defined in section 76–1–402 of the Utah Code:

> (3) A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when:
>
> > (a) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. . . .

Utah Code Ann. § 76–1–402(3)(a) (1995). Thus, a defendant may not be convicted or punished for "both the offense charged and a lesser included offense." *State v. Wood*, 868 P.2d 70, 89 (Utah 1993).

Utah courts apply a two-tiered analysis to claims of lesser included offenses. *See State v. Ross*, 951 P.2d 236, 241 (Utah Ct.App. 1997); *see also State v. Hill*, 674 P.2d 96, 97 (Utah 1983). Establishing whether a greater-lesser relationship exists between two crimes requires us first to compare the statutory elements of each crime. *See Hill*, 674 P.2d at 97. If the two crimes are " 'such that the greater cannot be committed without necessarily having committed the lesser,' " the lesser crime merges into the greater crime and the State cannot convict and punish the defendant for both offenses. *Id.* (quoting *State v. Baker*, 671 P.2d 152, 156 (Utah 1983)). However, where the two crimes have multiple variations, "[t]his theoretical comparison is insufficient . . . since a greater-lesser relationship may exist between *some* variations of the crimes and not others." *Duran v. Cook*, 788 P.2d 1038, 1040 (Utah Ct.App.1990) (emphasis added). In such circumstances, we must also "consider the evidence to determine whether the great-er-lesser relationship exists between the specific variations of the crimes actually proved at trial." *Hill*, 674 P.2d at 97.

Because a greater-lesser relationship may exist between some variations of first degree aggravated burglary and second degree aggravated assault, we must necessarily undertake the secondary test set forth in *Hill*.

Aggravated burglary may be committed in several ways:

> (i) A person is guilty of aggravated burglary if in attempting, committing, or fleeing from a burglary [4] the actor or another participant in the crime:
>
> > (a) causes bodily injury to any person who is not a participant in the crime;
> >
> > (b) uses or threatens the immediate use of a dangerous weapon against any person who is not a participant in the crime; or
> >
> > (c) possesses or attempts to use any explosive or dangerous weapon.

Utah Code Ann. § 76–6–203(1) (1995).

Aggravated assault may also be committed in several ways. A defendant is guilty of aggravated assault if, while committing an assault,[5] the accused

> (a) intentionally causes serious bodily injury to another; or
>
> (b) under circumstances not amounting to a violation of subsection (1)(a), uses a dangerous weapon . . . or other means or force likely to produce death or serious bodily injury.

*Id.* § 76–5–103(1) (Supp.1996). Examining the statutory elements of the two crimes, it is clear that *some* variations of aggravated burglary may include aggravated assault. For instance, the State might prove a defendant committed aggravated burglary by showing that (1) a defendant unlawfully entered a building with intent to commit a burglary;

---

**4.** Utah Code Ann. § 76–6–202(1) (1995) provides:
> A person is guilty of burglary if he enters or remains unlawfully in a building or .any portion of a building with intent to commit a felony or theft or commit an assault on any person.

**5.** Utah Code Ann. § 76–5–102(1) (Supp.1996) provides:
> Assault is:

(a) an attempt, with unlawful force or violence, to do bodily injury to another;
(b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or
(c) an act, committed with unlawful force or violence, that causes or creates a substantial risk of bodily injury to another.

(2) while committing the burglary, the defendant assaulted a victim; and (3) the defendant used a dangerous weapon. Under this factual scenario, second degree aggravated assault, which requires that a defendant use a dangerous weapon, would be established by "proof of the same or less than all the facts" required to prove first degree aggravated burglary. *Hill,* 674 P.2d at 97 (citations omitted); *see also* Utah Code Ann. § 76–1–402(3)(a) (1995). In such a case, aggravated assault would be a lesser included offense of aggravated burglary.

However, it is also possible that an accused who merely threatens use of a dangerous weapon during a burglary could commit aggravated burglary without using the weapon or causing bodily injury of any sort, and, therefore, not commit aggravated assault. Consequently, aggravated assault would not be a lesser included offense in this variation of aggravated burglary.

We next consider the evidence in this case "to determine whether that [greater-lesser] relationship existed between the *specific* variations of the crimes actually proved at the defendant's trial." *State v. Bradley,* 752 P.2d 874, 877 (Utah 1988) *as amended on reh'g* (per curiam) (emphasis added).

The elements of aggravated burglary presented at trial were that defendant (1) entered and remained unlawfully in Denny's apartment; (2) with intent to commit a felony or an assault; and (3) while committing the burglary, defendant both caused bodily injury to Denny and used and threatened to use a gun against Denny. *See* Utah Code Ann. §§ 76–6–202, –203 (1995). The elements of aggravated assault presented at trial, however, were that (1) while committing an assault on Denny, defendant (2) used a dangerous weapon and (3) *intentionally* caused *serious* bodily injury to Denny. *See id.* §§ 76–5–102, –103 (Supp.1996).

The evidence demonstrated at least three separate aggravated assaults: (1) in the bathroom, defendant pistol-whipped Denny, injuring her scalp; (2) in the living room, defendant pistol-whipped her, cutting her above the eye; and (3) in the Jeep, defendant pistol-whipped Denny, breaking her nose. While it is true that defendant twice assault-ed Denny during the aggravated burglary, he assaulted her a third time after he had left the scene of the burglary and was in the act of committing aggravated kidnaping. Accordingly, the elements of aggravated assault were established by proof of *more* than "all the facts required to establish" the aggravated burglary. *See id.* § 76–1–402(3)(a) (1995). Thus, whether the jury was properly instructed to find this additional proof becomes determinative.

In this case, the jury instructions also demonstrate that the prosecution did not rely upon the same elements to prove aggravated burglary and aggravated assault. Instruction twenty required the jury to find the following elements to convict defendant of aggravated burglary: (1) that defendant entered or remained unlawfully in Denny's dwelling; (2) that he did so with the intent to commit a felony or an assault; and (3) that he *either* caused bodily injury to Denny *or* used or threatened the use of a dangerous weapon against her. When that instruction is compared to Instruction twenty-two on aggravated assault, it is apparent that the jury had to find an additional element for conviction of that crime *beyond* the elements of aggravated burglary. Instruction twenty-two required the jury to find: (1) that defendant assaulted Denny; and (2) that he *intentionally* caused *serious* bodily injury to her.

The jury could have concluded that defendant committed aggravated burglary either when he grabbed Denny as she entered her apartment, put the gun to her head, and threatened to kill her, or when he fired the gun at her in the bathroom without inflicting any injury. Thus, the evidence presented by the State justified defendant's conviction for aggravated burglary *before* he ever injured Denny. Therefore, to convict defendant of aggravated assault as well as aggravated burglary, the jury had to find defendant acted intentionally in causing serious bodily injury—a finding unnecessary for the aggravated burglary conviction. Under the facts of this case, then, aggravated assault was not a lesser included offense of aggravated burglary. Accordingly, there was no error in allowing the jury to convict defendant of

aggravated assault as well as aggravated burglary.[6]

## CONCLUSION

We conclude the trial court did not err in admitting the challenged photographs because they were not "gruesome" and their prejudicial potential did not substantially outweigh their probative value. Furthermore, the trial court did not abuse its discretion in admitting evidence of defendant's prior conviction, because it was relevant to defendant's credibility and, given the limitations of its use, was more probative than prejudicial. Finally, under the facts of this case, aggravated assault is not a lesser included offense of aggravated burglary, and defendant was therefore properly convicted of both. We thus affirm defendant's conviction.

WILKINS, Associate P.J., and JACKSON, J., concur.

**6.** Defendant also argues that the combination of errors occurring at trial requires reversal under the cumulative error doctrine. Because we have found no trial error on the issues raised by defendant, we need not address his claim resting on the cumulative error doctrine. Under that doctrine, we must reverse "only if 'the cumulative effect of the several errors undermines our confidence ... that a fair trial was had.'" *Dunn*, 850 P.2d at 1229 (citation omitted).