2014 UT App 250

# THE UTAH COURT OF APPEALS

PETER DAVID ZAPPE,
Petitioner and Appellee,
*v.*
KRISTIE BULLOCK,
Respondent and Appellant.

Memorandum Decision
No. 20130557-CA
Filed October 23, 2014

Third District Court, Tooele Department
The Honorable Robert W. Adkins
No. 130300161

Staci A. Visser, Attorney for Appellant

Heidi M. Nestel and Spencer Banks, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and JOHN A. PEARCE
concurred.

DAVIS, Judge:

¶1     Kristie Bullock appeals the district court's entry of a civil
stalking injunction against her. Bullock argues that the district
court's ruling was not supported by sufficient evidence and that
the district court erred by prohibiting her from impeaching
petitioner Peter David Zappe with evidence of a prior felony
conviction. We affirm.

I. Sufficiency of the Evidence

¶2     We first address Bullock's argument that the district court did not base its entry of the civil stalking injunction on sufficient evidence. For a court to issue a civil stalking injunction it must determine "by a preponderance of the evidence that stalking of the petitioner by the respondent has occurred." Utah Code Ann. § 77-3a-101(7) (LexisNexis 2012). What constitutes "stalking" in this context is based on the definition of stalking provided in the criminal code, *see id.* § 77-3a-101(1), which states,

> A person is guilty of stalking who intentionally or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person:
>      (a) to fear for the person's own safety or the safety of a third person; or
>      (b) to suffer other emotional distress,

*id.* § 76-5-106.5(2).

¶3     Bullock specifically challenges the district court's findings supporting the "course of conduct" element of stalking. "'[C]ourse of conduct' means two or more acts directed at or toward a specific person, including . . . acts in which the actor . . . threatens . . . a person, or interferes with a person's property . . . ." *Id.* § 76-5-106.5(1)(b).

¶4     "[W]hether the defendant engaged in a course of conduct . . . that would cause a reasonable person emotional distress is a question of fact." *Baird v. Baird*, 2014 UT 8, ¶ 29, 322 P.3d 728 (omission in original) (citation and internal quotation marks omitted). "[W]e review the trial court's findings of fact for clear error, reversing only where [a] finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." *Ellison v. Stam*, 2006 UT App 150, ¶ 17, 136 P.3d 1242 (alterations in original) (citation and internal

quotation marks omitted). We "resolv[e] all disputes in the evidence in a light most favorable to the trial court's determination." *State v. Perea*, 2013 UT 68, ¶ 32, 322 P.3d 624 (citation and internal quotation marks omitted).

¶5   Here, the district court ruled that an incident occurring on or around December 19, 2012 (the knife incident) and a series of incidents occurring on December 25, 2012 (collectively, the Christmas incident) satisfied the course of conduct element. Bullock challenges only the findings surrounding the knife incident.

¶6   The knife incident took place in the kitchen of Bullock's home while Bullock and Zappe discussed the new car Zappe helped buy for his then-girlfriend and now-wife Paige. Paige is Bullock's daughter. Bullock was holding a kitchen knife during this interaction and, at one point, held the knife within inches of Zappe's body and warned him against "interfering with her relationship with Paige." The court found that Bullock also described to Zappe her gun collection and the "other people who could do harm to [him] and to Paige" in order "to impress upon [Zappe] how serious [she] was."[1]

¶7   Bullock argues that the only evidence that she threatened Zappe both orally and with a knife came exclusively from Zappe's own testimony and that Zappe "repeatedly showed himself to be a difficult witness, lacking in credibility." Bullock argues that the district court's "specific findings regarding Zappe's inappropriate

---

1. The Christmas incident began with Bullock upset that Paige invited Zappe to their Christmas gathering. Bullock became argumentative and belligerent, to the point that Paige's sister left the house to get away from all of the arguing. Bullock's behavior gradually escalated to include covering the hood of Paige's new car with bags of garbage, locking herself and Paige in Paige's bedroom, grabbing and shaking Paige, and knocking Zappe's cell phone out of his hands after Zappe threatened to call police.

behavior towards the other involved parties" suggest that "to some extent, the trial court had concerns about Zappe's character and credibility." In addition, Bullock points out various discrepancies in Zappe's testimony that she contends "call into question Zappe's credibility" and "make Zappe's version of at least some of the events highly improbable."

¶8      "As we have often said, credibility is an issue for the trier of fact," which in this case is the district court. *See State v. Dunn*, 850 P.2d 1201, 1213 (Utah 1993). And here, the district court's findings adequately support the court's judgment and demonstrate the reasoning employed by the court in reaching "the ultimate conclusion on each factual issue." *See Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 28, 70 P.3d 35 (emphasis, citation, and internal quotation marks omitted).

¶9      The district court entered its findings orally at the close of the evidentiary hearing on Zappe's petition for a civil stalking injunction. The court first noted that there were a number of "unsettling" things about the case, including the "unfortunate" relationship between Bullock and Paige that was marked by their apparent inability to "be civil to each other when they're together." The court also described as "bizarre" uncontested testimony that Zappe had thrown cold water on Paige's twin sister while she was in the shower. The court recognized that Zappe and Bullock disagreed on what occurred, particularly with respect to the knife incident, and it noted in its findings when and how the parties' versions of the events differed. However, the court concluded that "much of what [Zappe] claims is . . . corroborated by either [Bullock] or [Bullock's] witnesses." The court observed that Zappe's version of the Christmas incident was largely corroborated by Bullock's witnesses, bolstering Zappe's credibility. The district court concluded that, "based on all of the evidence," a "course of conduct" had occurred. Accordingly, the district court's findings are not against the clear weight of the evidence and its ruling is supported by sufficient evidence. *See Ellison v. Stam*, 2006 UT App 150, ¶ 17, 136 P.3d 1242.

## II. Impeachment Evidence

¶10    Next, Bullock argues that the district court erred by prohibiting her from impeaching Zappe's testimony with evidence of his prior felony conviction, as permitted by rule 609(a) of the Utah Rules of Evidence. Rule 609(a) governs a party's ability to attack "a witness's character for truthfulness [with] evidence of a criminal conviction" and states,

> (a)(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

>> (a)(1)(A) must be admitted, subject to Rule 403, in a civil case . . . ; and

>> . . . .

> (a)(2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

Utah R. Evid. 609(a).

¶11    "Although a trial court's determination on the admissibility of evidence is a question of law reviewed for correctness, its decision is generally accorded a good deal of discretion by an appellate court." *State v. Betha*, 957 P.2d 611, 616 (Utah Ct. App. 1998) (citations and internal quotation marks omitted). Accordingly, we will not reverse a district court's ruling on the admissibility of evidence "unless a substantial right of the party has been affected." *Id.* (citation and internal quotation marks omitted). "In determining whether a 'substantial right of the party is affected,' we look at the evidence as a whole in the context of the trial to determine if, absent the error [in admitting or excluding the

evidence], there is a reasonable likelihood that a different result would have been reached." *State v. Speer*, 750 P.2d 186, 189 (Utah 1988). In other words, "we will reverse only if the error was harmful." *Dunn*, 850 P.2d at 1221.

¶12 Zappe described his third-degree-felony conviction as involving "an informal business arrangement where there were unclear expectations." He explained that the oral agreement was for Zappe to repair and sell two vehicles on behalf of the victims, in exchange for which Zappe would keep $200 from the sale of each vehicle. Zappe repaired and sold the first vehicle and returned the proceeds to the victims. Zappe testified that the second vehicle was unexpectedly expensive for Zappe to repair and that the parties disagreed as to whether the costs Zappe incurred in fixing the vehicles were sufficiently satisfied by the terms of their agreement. The victims felt that Zappe had been adequately compensated, and Zappe felt he was owed more. To resolve the dispute, Zappe simply kept the money from the sale of the second vehicle, prompting his arrest. He entered a guilty plea to theft charges and paid restitution.

¶13 The district court determined that Zappe's conviction did not involve a dishonest act or a false statement and excluded the impeachment evidence on that basis, as required by rule 609(a)(2). Bullock argues that the district court's ruling that Zappe's prior conviction did not involve a dishonest act is incorrect and argues that the evidence should have nonetheless been admitted pursuant to rule 609(a)(1) because it is relevant and is probative of Zappe's credibility.

¶14 First, we agree with the district court that Zappe's felony conviction did not involve a crime of dishonesty and that the impeachment evidence was therefore properly excluded under rule 609(a)(2). "The focus of [rule 609(a)(2)] concerns impeachment based on the probability that a particular witness may not be telling the truth as evidenced by prior acts of dishonesty on the part of that witness." *State v. Morrell*, 803 P.2d 292, 294 (Utah Ct. App.

1990). The district court determined, based on Zappe's description of the circumstances surrounding his conviction, that the third-degree-felony theft conviction did not constitute "a crime of false statement." Bullock argues that Zappe's acts resulting in his conviction were inherently dishonest where he purposefully absconded with the victims' money and without seeking a more conventional solution to the parties' disagreement.

¶15    "While all crimes involve, in some broad sense, an element of dishonesty," *State v. Wight*, 765 P.2d 12, 18 (Utah Ct. App. 1988), Utah courts have specifically ruled that "[t]heft is not a crime involving dishonesty or false statement within the meaning of rule 609(a)(2)," *State v. Bruce*, 779 P.2d 646, 656 (Utah 1989) (citation and internal quotation marks omitted). Rather, theft "involves stealth and demonstrates a lack of respect for the persons or property of others[ and] is not characterized by an element of deceit or deliberate interference with a court's ascertainment of truth." *Bruce*, 779 P.2d at 656 (citation and internal quotation marks omitted). A theft conviction may, however, "be admissible under the rule if in fact the crime was committed by fraudulent or deceitful means." *Id.* (citation and internal quotation marks omitted); *cf. Wight*, 765 P.2d at 18 ("[T]he crime of robbery is not necessarily one of dishonesty or false statement for purposes of 609(a)(2) admissibility."). However, Bullock's argument, without more, does not convince us that Zappe's prior conviction involved fraud, deceit, or dishonesty. Accordingly, we affirm the district court's decision to exclude the impeachment evidence under rule 609(a)(2).

¶16    Last, we address the admissibility of the conviction evidence under rule 609(a)(1). Zappe challenges Bullock's arguments under this rule as unpreserved. For purposes of our analysis, we will assume, without deciding, that the district court erred by not addressing the conviction evidence under rule 609(a)(1). From this starting point, we need address only whether the presumed error was harmful, regardless of whether we review Bullock's arguments as preserved or under a plain error standard. *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993) (explaining that to establish plain error,

an appellant must demonstrate, among other things, that "the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant"); *State v. Brown*, 771 P.2d 1093, 1095 (Utah Ct. App. 1989) (noting that a district court's error in admitting evidence "is reversible only if a review of the record persuades us that without the error there was a reasonable likelihood of a more favorable result for the defendant").

¶17    Bullock asserts that the relevance of the felony evidence is derived from the notion that all of the evidence presented at trial was testimonial, thereby making the credibility of the witnesses essentially outcome determinative. *But see State v. Templin*, 805 P.2d 182, 188 (Utah 1990) (recognizing that a person can be convicted of a crime based "solely on the testimony of the victim"). However, as discussed above, because Zappe's conviction did not involve a crime of dishonesty, the evidence speaks little of Zappe's propensity for truthfulness in the situation before us. The conviction evidence's relevance, Bullock argues, follows from the fact that it reflects negatively on Zappe and implies a propensity for poor judgment, similar to the evidence of Zappe's behavior of splashing Paige's sister with cold water while she showered. Although the excluded evidence carries with it the stigma of a felony offense,[2] we are not persuaded that it would have had any greater bearing on the district court's decision than the shower evidence or that the cumulative effect of the shower evidence and conviction evidence would create a "reasonable likelihood of a more favorable outcome" for Bullock. *See Dunn*, 850 P.2d at 1208; *accord Brown*, 771 P.2d at 1095. Ultimately the district court acknowledged the discrepancies between Zappe's and Bullock's testimonies, including their conflicting accounts of the knife incident, but found Zappe more credible because his testimony was otherwise largely corroborated by other witnesses, which Bullock

---

2. Zappe's counsel suggested that the conviction may have been charged as a felony purely as a result of a prior misdemeanor conviction that was on Zappe's record at the time of that offense.

does not dispute. Thus, even assuming that the exclusion of the conviction evidence under rule 609(a)(1) was in error, the error was not harmful and does not warrant reversal.

### III. Conclusion

¶18　The district court's decision to grant a civil stalking injunction against Bullock is supported by sufficient evidence, and the court properly excluded evidence of Zappe's prior felony conviction under rule 609(a)(2). Assuming, without deciding, that the district court erred by excluding the conviction evidence under rule 609(a)(1), the error was harmless. Affirmed.

––––––––